# In the United States Court of Federal Claims

No. 13-421V
(Filed Under Seal:  June 30, 2015)
(Reissued:  July 20, 2015)[*]

| | | |
|---|---|---|
| G.G.M., a Minor, by and Through her Guardian Ad Litem, LORENA MORA, | ) ) ) ) | |
| Petitioner, | ) ) | Relief from Judgment; RCFC 60(b); Vaccine Rule 36(a) |
| v. | ) ) | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | ) ) ) | |
| Respondent. | ) ) ) ) ) | |

*Danny Chia-Chi Soong*, Law Office of Danny Soong, West Covina, CA, for plaintiff.

*Claudia Barnes Gangi*, Senior Trial Attorney, with whom were *Catharine E. Reeves*, Assistant Director, *Vincent J. Matanoski*, Deputy Director, *Rupa Bhattacharyya*, Director, and *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, United States Department of Justice, Civil Division, Torts Branch, Washington, D.C., for defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

This case is before the Court on a motion for review of the February 27, 2015 decision of Special Master Laura Milman denying the petitioner's motion seeking relief from judgment pursuant to Rule 60(b) of the Rules of the Court of Federal Claims ("RCFC").  For the reasons set forth below, the Court concludes that the Special Master's decision is neither arbitrary, capricious, an abuse of discretion, nor contrary to law.  42 U.S.C. § 300aa-12(e)(2)(B).  Accordingly, the motion for review must be **DENIED**.

---

[*] In accord with the Rules of the Court of Federal Claims, App. B, Rule 18(b), this opinion was initially filed under seal to afford the parties fourteen days to propose redactions.  The parties did not propose any redactions.  Accordingly, the opinion is reissued publically in its original form.

**BACKGROUND**

**I.      The Original Petition and Its Voluntary Dismissal**

This case arose out of a petition for compensation under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-1 to 300aa-34 (2012)[1] that Lorena Mora, acting as guardian ad litem for her daughter, G.G.M., filed on June 25, 2013.  According to the petition, G.G.M. was born in 2010.  Pet. Vaccine Compensation ¶ 1, ECF No. 1.  Petitioner states that the pregnancy and delivery were normal, without complications for either mother or child.  Id. at ¶ 2.  Prior to the facts given rise to this case, petitioner alleges, G.G.M. was in good health and was not diagnosed with any medical conditions.  Id. at ¶ 4; Mot. for Review at 3, Mar. 26, 2015, ECF No. 34.

When G.G.M. was two years old, Mrs. Mora, concerned about a rash on G.G.M.'s right leg that had been there for three days, took her to a healthcare provider.  Special Master's Order at 1, August 23, 2013, ECF No. 6 [hereinafter "SM Order"].  The provider diagnosed G.G.M. with dermatitis.  Id.  During the visit, G.G.M. received the influenza ("flu") vaccine.  Id.  She had previously received a flu vaccine on October 26, 2011.  Id.  Two days after receiving the second flu vaccine, G.G.M. complained of abdominal pain, cried in pain, was unable to walk, and had not urinated since the previous night.  SM Order at 1; Pet. ¶ 5.  Mrs. Mora drove G.G.M. to the emergency room.  Mot. for Review at 3.  The doctor found that G.G.M. had sensory change and focal weakness, decreased tone in her lower extremities, and decreased deep tendon reflexes.  SM Order at 1.  She had no response to painful stimuli up to her abdomen.  Id. at 1-2.  The doctor narrowed down a possible diagnosis to botulism, transverse myelitis, or Guillain-Barré Syndrome.  Id.  G.G.M. was then transferred to the Kaiser Hospital where she was hospitalized from September 7, 2012 to October 6, 2012 and diagnosed with transverse myelitis caused by the flu vaccine.  Id. at 2.

Petitioner states that G.G.M. is now completely paraplegic.  Mot. for Review at 3.  She further states that G.G.M. is "unable to ambulate and maneuvers around in a wheelchair" and that she "has a permanent catheter and has to be changed every three to four hours."  Id.  In addition, petitioner asserts that as she "continues to grow toward adulthood, the life care planner estimate[s] that G.G.M. will need in-home health care, an extensive number of various orthopedic and urologic surgeries, and assorted medication due to her medical conditions resulting from her transverse myelitis."  Id.

After the petition for compensation was filed, petitioner made a settlement demand on March 11, 2014 to which the government made a counteroffer on July 11, 2014.  Special Master's Decision at 2, July 21, 2014, ECF No. 17.  After reviewing the government's

---

[1] The Vaccine Act is a remedial statute that compensates persons injured by a vaccine under a no-fault regime.  Cloer v. Sec'y of HHS, 654 F.3d 1322, 1350 (2011) (Dyk, J., dissenting).  A successful petitioner receives compensation from a fund administered by the government, which is funded by a tax imposed on the manufacturers, producers, and importers of vaccines.  26 U.S.C. § 4131 (2012).

counteroffer, petitioner requested a status conference with the Special Master and the government.  Id.  During the status conference, which was held on July 21, 2014, petitioner's counsel reported that petitioner had "decided that she could receive more compensation in civil court against the vaccine administrator and manufacturer because of the inapplicability of the collateral source rule in the Vaccine Program and the $250,000.00 cap for pain and suffering under the Vaccine Act."  Id.[2]

Under the Vaccine Act, "[n]o person may bring a civil action for damages . . . unless a petition has been filed . . . for compensation under the Program . . . and the United States Court of Federal Claims has issued a judgment under [42 U.S.C. § 300aa-12] . . . and such person elects under [42 U.S.C. § 300aa-21(a)] to file such an action."  42 U.S.C. § 300aa-11(a)(2)(A).  Accordingly, in order to secure the necessary judgment, petitioner moved to dismiss her vaccine case.  Mot. for Review at 3.  The Special Master granted the motion to dismiss on June 11, 2014 without making any findings of fact or conclusions of law as to the merits of the petition for compensation.  Special Master's Decision at 2.

On August 11, 2014, the parties filed a joint notice of their intent not to seek review of the Special Master's decision dismissing the case.  Joint Notice of Decision Not to Seek Review at 1, ECF No. 19.  The Clerk of the Court entered judgment on August 29, 2014, ECF No. 20, and petitioner filed a Notice of Election to File a Civil Action on September 26, 2014.  ECF No. 22.

## II.     Petitioner's Civil Action

On October 14, 2014, the petitioner filed a suit in the Los Angeles Superior Court alleging causes of action for strict products liability for manufacturing defect, design defect, and failure to warn against Sanofi Pasteur, Inc. ("Sanofi"), the manufacturer of the flu vaccine administered to G.G.M., and unnamed defendants, Does 1 through 100.  Mot. for Review at 4; Attach. to Notice of Removal ¶¶ 21-57, G.M. v. Sanofi Pasteur, Inc., No. 2:14-09549 (C.D. Cal. Dec. 16, 2014).  On December 4, 2014, petitioner demanded arbitration with Kaiser Permanente for medical malpractice and lack of informed consent based on the alleged failure of G.G.M.'s pediatrician and nurse to provide the Vaccine Administration Sheet to petitioner prior to administering G.G.M.'s vaccination on September 5, 2012.  Mot. for Review at 4.

On December 16, 2014, Sanofi filed a Notice of Removal to federal court based on diversity jurisdiction and the United States Supreme Court's decision in Bruesewitz v. Wyeth L.L.C., 562 U.S. 223 (2011).  Notice of Removal at 2, G.M. v. Sanofi Pasteur, Inc., No.2:14-09549 (C.D. Cal. Dec. 16, 2014).  In that case, the Supreme Court, interpreting 42 U.S.C. § 300aa–22(b)(1),[3] held that "the National Childhood Vaccine Injury Act preempts all design-

---

[2] The status conference was not recorded or transcribed.  The Court, accordingly, relies upon the Special Master's decision as the basis for its understanding of the statements made by petitioner's counsel at the conference.

[3] 42 U.S.C. § 300aa–22(b)(1) provides that "[n]o vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the

defect claims against vaccine manufacturers brought by plaintiffs who seek compensation for injury or death caused by vaccine side effects." Bruesewitz, 562 U.S. at 243.  On February 10, 2015, Sanofi filed a Rule 12(b) motion to dismiss petitioner's entire product liability suit on the basis of this holding and on the basis of section 300aa-22(c) of the Vaccine Act.[4]  Corrected Notice of Motion & Motion to Dismiss, G.M. v. Sanofi Pasteur, Inc., No. 2:14-09549 (C.D. Cal. February 10, 2015).  According to Sanofi, petitioner's manufacturing defect claim was also preempted by the act since it was "simply a repackaged version of their preempted design defect claims."  Id. at 14.  In any case, Sanofi argued that petitioner's manufacturing defect claim was "inextricably related, and cannot be separated from the defect design claim."  Id.

On April 28, 2015, defendant's motion to dismiss was granted, and petitioner's complaint was dismissed with leave to amend.  Order at 2, G.M. v. Sanofi Pasteur, Inc., No. 2:14-09549 (C.D. Cal. April 28, 2015).  Thereafter, petitioner amended her complaint to allege that Sanofi had post-market data showing that at least two other children who received a flu vaccine from the batch petitioner received had suffered severe adverse reactions to the vaccine.  First Am. Compl. ¶¶ 32, 41-42, G.M. v. Sanofi Pasteur, Inc., No. 2:14-09549 (C.D. Cal. April 28, 2015).  Petitioner alleged causes of action for strict product liability for manufacturing defect and improper warnings, negligent manufacturing, intentional misrepresentation by concealment, and breaches of express and implied warranties.  Id. at ¶¶ 46-94.

## III.   Petitioner's Motion Under Rule 60(b) for Relief from Judgment

In the meantime, on January 21, 2015, about a month after Sanofi filed its notice of removal to federal court, and several weeks before it moved to dismiss, petitioner filed a motion with the Special Master for relief from judgment pursuant to RCFC 60(b)(1) or, in the alternative, 60(b)(6).  Mot. Relief J. 1, ECF No. 23.  Petitioner requested that her vaccine claim be restored without prejudice in exchange for dismissing her pending product liability lawsuit against Sanofi and withdrawing her demand for arbitration with Kaiser Permanente.  Id. at 2.  In support of the motion, petitioner's counsel stated that, at the time petitioner moved for voluntary dismissal, counsel had been unaware that any design defect claim or failure to warn claim against the vaccine manufacturer was preempted by the Vaccine Act.  Id. at 4-5, 9 (Decl. of Danny Soong ¶ 4).  Petitioner argued that her counsel's ignorance of both the Supreme Court's decision in Bruesewitz and section 300aa-22(c) of the Vaccine Act constitutes "mistake, inadvertence, surprise or excusable neglect" under RCFC 60(b)(1).  Id. at 4-5.  In the alternative, petitioner argued that the Special Master should set aside judgment under the catch-all provision in RCFC

---

administration of a vaccine after October 1, 1988, if the injury or death resulted from side effects that were unavoidable even though the vaccine was properly prepared and was accompanied by proper directions and warnings."

[4] That provision states that "[n]o vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, solely due to the manufacturer's failure to provide direct warnings to the injured party (or the injured party's legal representative) of the potential dangers resulting from the administration of the vaccine manufactured by the manufacturer."  42 U.S.C. § 300aa-22(c).

60(b)(6), which states that the court may relieve a party from final judgment for "any other reason that justifies relief." Id. at 6-7.

## IV.    The Special Master's Decision Denying Petitioner's Motion

The Special Master denied the petitioner's motion.  She noted that the factors to be considered in determining whether a movant has made a prima facie case for relief under Rule 60(b)(1) are:  "(1) whether the movant has a meritorious claim or defense; (2) whether the nonmovant would be prejudiced by the granting of relief; and (3) whether the matter sought to be relieved was caused by the movant's own culpable conduct." Mora v. Sec'y of HHS, No. 13-421V, 2015 WL 1275389, at *2 (Fed. Cl. Spec. Mstr. Feb. 27, 2015) (quoting Orient Overseas Container Line (UK) Ltd. v. United States, 52 Fed. Cl. 805, 807 (Fed. Cl. 2002)).  The Special Master concluded that G.G.M. did have a meritorious (legally tenable) claim in that "the petition was timely; petitioner filed an affidavit, proof of vaccination, and accompanying medical records; and several treating physicians opined that G.G.M.'s vaccination caused her injury." Id. at *3.  She also observed that the respondent had not argued that she would be prejudiced in any way if the motion for relief from judgment were granted and concluded that she did not foresee any significant prejudice against respondent if relief were granted. Id. at *4.

The Special Master then turned to the third factor:  "whether the matter sought to be relieved was caused by the movant's own culpable conduct." Id. at *4 (quoting Orient Overseas, 52 Fed. Cl. at 807).  She noted that the decision to move for voluntary dismissal was premised upon petitioner's counsel's ignorance of the applicable law, which she found to violate the attorney's "duty to his client to provide competent legal service, which includes staying apprised of applicable statutory law and case law." Id. at *4.  The Special Master found that relief under Rule 60(b)(1) would be improper because of what she called "a well-established rule that gross carelessness, ignorance of the rules, and/or ignorance of the law are not sufficient bases to afford Rule 60(b)(1) relief." Id. (citing Pettle v. Bickham, 410 F.3d 189, 192 (5th Cir. 2005); Pryor v. U.S. Postal Serv., 769 F.2d 281, 287 (5th Cir. 1985); Bridgham v. Sec'y of HHS, 33 Fed. Cl. 101, 105 (Fed. Cl. 1995)).

The Special Master noted that "[m]any of the Vaccine Act cases involving Rule 60(b)(1) concern the dismissal of a case for an attorney's failure to meet deadlines." Id. (citing Freeman v. Sec'y of HHS, 35 Fed. Cl. 280, 282 (Fed. Cl. 1996); Coleman v. Sec'y of HHS, No. 06-0710V, 2011 WL 6828475, at *4 (Fed. Cl. Spec. Mstr. 2011)).  But, she reasoned, "a dismissal decision granting a motion for voluntary dismissal is quite different from a dismissal decision for failure to prosecute following counsel's failure to comply with deadlines." Id.  Thus, "[w]hereas a decision for failure to prosecute may be unexpected by the attorney, a decision following a motion for voluntary dismissal is not.  A motion for voluntary dismissal is an extreme and deliberate action that should be taken only with the utmost care, and attorneys should be expected to fully research the consequences of a voluntary dismissal." Id. (emphasis in original).

Further, the Special Master observed, "it is not fundamentally unfair to deny relief to petitioner due to her counsel's ignorance of the law and his failure to adequately research the consequences of a voluntary dismissal" because "[p]etitioners are held accountable for the acts and omissions of their chosen legal counsel." Id. at *5 (citing Pioneer Inv. Servs. Co. v.

5

<u>Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 397 (1993) (holding that petitioner cannot avoid "the consequences of the acts or omissions of [his] freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'")).

The Special Master also declined to provide petitioner relief under Rule 60(b)(6).  Under that rule, a court may relieve a party from judgment for "any other reason that justifies relief." RCFC 60(b)(6).  The Special Master found that the petitioner had failed to establish that absent relief, "a grave miscarriage of justice" would result.  <u>Id.</u> at *5 (quoting <u>Coleman</u>, 2011 WL 6828475, at *3).  She noted that while petitioner could not proceed with her design defect or failure to warn claim, she could still pursue her pending manufacturing defect claim against the vaccine manufacturer and that she still had a pending demand for arbitration against the vaccine administrator.  <u>Id.</u>  Further, she observed, the petitioner might recover additional damages in a future legal malpractice suit.  <u>Id.</u>

Moreover, the Special Master reasoned, "even if petitioner's other claims were completely unviable, she has not shown that these are 'extraordinary circumstances' in which she is 'faultless.'"  <u>Id.</u> at *6 (citing <u>Pioneer</u>, 507 U.S. at 393).  In that regard, she reiterated that "petitioner's counsel's failure to research the repercussions of a voluntary dismissal was culpable conduct, and this conduct is imputed to petitioner."  <u>Id.</u>  While acknowledging petitioner's argument that vacating the judgment "would further the purpose of the Vaccine Act by protecting an injured child's right to receive a decision on the merits for her vaccine injury claim," the Special Master observed that "there is also a strong public policy in the 'overriding interest in the finality and repose of judgments.'"  <u>Id.</u> (quoting, <u>Vessels v. Sec'y of HHS</u>, 65 Fed. Cl. 563, 569 (2005)).

## DISCUSSION

### I.      Standard of Review

Under the Vaccine Rules, a party may seek relief from judgment pursuant to RCFC 60. Vaccine Rule 36(a).  If the petition was not previously assigned to a Court of Federal Claims judge, the motion is referred to the previously assigned special master.  Vaccine Rule 36(a)(2).

RCFC 60(b) is identical to Rule 60(b) of the Federal Rules of Civil Procedure.  It provides that:

> On motion and just terms, the court may relieve a party or its legal representative
> from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been
> discovered in time to move for a new trial under RCFC 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or
> misconduct by an opposing party;
> (4) the judgment is void;

6

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

In ruling on a motion under Rule 60(b) a court must strike "a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done." Hutchins v. Zoll Med. Corp., 492 F.3d 1377, 1386 (Fed. Cir. 2007) (quoting 11 Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2851, p. 227 (2d ed. 1995)).

The petitioner does not challenge the Special Master's conclusion denying her request for relief under Rule 60(b)(1). Instead she seeks review of the Special Master's conclusion denying relief under Rule 60(b)(6). Rule 60(b)(6) has been characterized as a "grand reservoir of equitable power to do justice in a particular case," although not a "bottomless" one. Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc., 714 F.3d 1289, 1295 (Fed. Cir. 2013) (quoting Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012)).

 A motion for relief under Rule 60(b)(6) may not be premised on one of the grounds for relief set forth in subsections (b)(1) through (b)(5). Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 (1988); Paul Revere Variable Annuity Ins. Co. v. Zang, 248 F.3d 1, 5 (1st Cir. 2001) ("The residual catchall provision [of the relief from judgment rule] allows a court to relieve a party from a final judgment where such relief is appropriate to accomplish justice, but the reasons for that relief are not encompassed by the other provisions of the rule."). These subsections are "mutually exclusive." Pioneer, 507 U.S. 380 at 393.

"As a remedial provision, Rule 60(b) is to be 'liberally construed for the purposes of doing substantial justice.'" Patton v. Sec'y of HHS, 25 F.3d 1021, 1030 (Fed. Cir. 1994) (citing 6A James W. Moore and Jo Desha Lucas, Moore's Federal Practice ¶¶ 60.18[8], 60.19 (2d ed. 1993)). At the same time, "[t]he United States Supreme Court has 'cautioned that the Rule should only be applied in 'extraordinary circumstances.'" Perry v. United States, 558 F. App'x. 1004, 1006 (Fed. Cir. 2014) (quoting Liljeberg, 486 U.S. at 864) (alterations omitted); see also Info. Sys. & Networks Corp. v. United States, 994 F.2d 792, 795 (Fed. Cir. 1993) (observing that "subsection (6) [of Rule 60(b)] requires a showing of 'extraordinary circumstances'"); CTS Corp. v. Piher Int'l Corp., 727 F.2d 1550, 1555 (Fed. Cir. 1984) ("Unless exceptional or extraordinary circumstances are shown, a Rule 60(b)(6) motion is generally not granted.").

The Special Master's decision whether to grant or deny relief under Rule 60(b) is reviewed under an abuse of discretion standard. Patton, 25 F.3d at 1029. "An abuse of discretion exists 'when the trial court's decision is clearly unreasonable, arbitrary or fanciful, or is based on clearly erroneous findings of fact or erroneous conclusions of law.'" Lazare Kaplan Int'l, Inc., 714 F.3d at 1293 (quoting Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d 1378, 1382 (Fed. Cir. 2002)).

**II.    Application of Standard in This Case**

This is a difficult case.  There is no question that the petitioner has been very poorly served by her counsel.  Counsel himself has characterized as "grossly negligent" his failure to conduct basic research concerning the viability of his alternative litigation strategy before requesting dismissal of the vaccine compensation petition.  Mot. for Review at 8.  Further, as the petitioner has noted, counsel's failure to conduct basic legal research has had and will continue to have extremely negative repercussions for G.G.M. and her family.  See id. at 11.  If the voluntary dismissal stands, they will be deprived of an opportunity to prove G.G.M.'s entitlement to compensation under the Vaccine Act.

Nonetheless, the standards for granting relief under Rule 60(b)(6) are demand, and the determination whether they are met in any particular instance is a highly discretionary one.  In this case, the Special Master decided not to exercise her discretion to set aside her order dismissing the petition because she concluded that the negligence of petitioner's counsel must be imputed to the petitioner and because the dismissal was the product of a voluntary and deliberate, albeit ill-advised, action taken by the petitioner (through her counsel).  Regrettably, and for the reasons set forth below, the Court has concluded that the Special Master's decision must be affirmed because she acted within her discretion in denying plaintiff's motion.

The first obstacle to petitioner's argument that the Special Master abused her discretion is the line of Supreme Court cases that have held, in analogous circumstances, that "clients must be held accountable for the acts and omissions of their attorneys."  Pioneer, 507 U.S. at 396 (holding that on the facts of the case,  the failure of respondent's counsel to file timely proof of a claim was the result of "excusable neglect" within the meaning of Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, but that the court of appeals had erred in not attributing counsel's fault to the respondent); see also Maples v. Thomas, 132 S. Ct. 912, 922 (2012) ("Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause'" for petitioner's procedural default for purposes of establishing his entitlement to seek federal habeas relief because "the attorney is the prisoner's agent, and under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent.") (quoting Coleman v. Thomas, 501 U.S. 722, 753-754 (1991)). Cf Link v. Wabash R.R. Co., 370 U.S. 626, 633 (1962) (holding that district court did not abuse its discretion by dismissing action for failure to prosecute and rejecting argument that "dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client," explaining that "[p]etitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent").

Applying these principles, one circuit—the Seventh—has categorically rejected the notion that an attorney's gross negligence may ever provide justification for affording his client relief under Rule 60(b), and another—the Second—has expressed reluctance to base Rule 60(b) relief on such negligence.  Dickerson v. Bd. of Educ., 32 F.3d 1114, 1118 (7th Cir.1994) (observing that "counsel's negligence, whether gross or otherwise, is never a ground for Rule 60(b) relief"); see also United States v. 7108 W. Grand Avenue, 15 F.3d 632, 634 (7th Cir. 1994) (rejecting Rule 60(b)(6) relief applying agency principles and holding that clients were bound by their attorney's acts, even if willful or grossly negligent), cert. denied, Flores v. United States,

8

512 U.S. 1212 (1994)); Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986) (noting Second Circuit's reluctance to adopt rule that attorney's gross negligence can supply basis for relief under Rule 60(b)(6)).[5]

 To be sure, several courts of appeals have found that these agency principles do not bar relief under Rule 60(b)(6) where an attorney's conduct has been "grossly negligent," but a close review of those decisions reveals, as described below, a common thread: attorney conduct that was so egregious that the courts concluded that counsel had effectively abandoned and/or affirmatively misled their clients. Moreover, as also discussed below, in all such cases the judgment sought to be vacated was either a default judgment or a dismissal for failure to prosecute, and not a party's voluntary, albeit ill-advised, decision to dismiss their complaint.

 Thus, in Community Dental Services v. Tani, 282 F.3d 1164, 1171-72 (9th Cir. 2002), the district court denied a defendant's Rule 60(b)(6) motion for relief from a default judgment, which relied upon a showing that counsel's gross neglect of the case was responsible for the entry of judgment against the defendant. The district court reasoned that the defendant could not rely upon the negligence of his counsel to show the existence of the extraordinary circumstances required to justify relief because the defendant was chargeable with the negligent acts of his counsel under principles of agency law, as described above. 282 F.3d at 1168. The court of appeals, however, reversed. Id. at 1172. It noted that several circuits had "distinguished a client's accountability for his counsel's neglectful or negligent acts—too often a normal part of representation—and his responsibility for the more unusual circumstance of his attorney's extreme negligence or egregious misconduct." Id. at 1168. "These courts," the Community Dental Services court observed, "have concluded that an unknowing client should not be held liable on the basis of a default judgment resulting from an attorney's grossly negligent conduct, and that in such cases sanctions should be imposed on the lawyer, rather than on the faultless client." Id. at 1169.[6]

---

[5] Another circuit—the Eleventh—has held that any attorney error which does not fall into the category of "excusable neglect" under Rule 60(b)(1) cannot serve as the basis for relief under Rule 60(b)(6) because "60(b)(1) and (b)(6) are mutually exclusive" so that "a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)." Solaroll Shade & Shutter Corp., Inc. v. Bio-Energy Sys., Inc., 803 F.2d 1130, 1133 (11th Cir. 1986).

[6] The court of appeals cited decisions in Boughner v. Secretary of Health, Education & Welfare, 572 F.2d 976, 978 (3d Cir. 1978), Shepard Claims Service, Inc. v. William Darrah & Associates, 796 F.2d 190, 195 (6th Cir. 1986), and L.P. Steuart, Inc. v. Matthews, 329 F.2d 234, 235 (D.C. Cir. 1964) as precedent from other circuits which have held that counsel's grossly negligent conduct could serve as the basis for affording relief from a default judgment under Rule 60(b)(6). Cmty. Dental Servs., 282 F.3d at 1168-69. Although the Ninth Circuit stated that it was "join[ing] the Third, Sixth, and Federal Circuits" in so holding, its discussion of the case law did not include any Federal Circuit decisions. The court of appeals did, however, cite a decision by the Claims Court (Primbs v. United States, 4 Cl. Ct. 366, 370 (1984), aff'd 769 F.2d 159 (Fed. Cir. 1985)). Cmty. Dental Servs., 282 F.3d at 1169. It seems likely that the court of appeals was confusing the Claims Court (whose decisions are not binding on the Federal Circuit) with the

Accordingly, the Ninth Circuit held that "where the client has demonstrated gross negligence on the part of his counsel, a default judgment against the client may be set aside pursuant to Rule 60(b)(6)." 282 F.3d at 1169.  It concluded that "extraordinary circumstances" existed to justify granting relief from the default judgment based on the record in that case, in which the defendant's attorney had ignored court orders, neglected motions, missed hearings and other court appearances, failed to file pleadings or serve them on opposing counsel, and otherwise "virtually abandoned his client by failing to proceed with his client's defense despite [repeated] court orders to do so."  Id. at 1170-71; see also Lal v. California, 610 F.3d 518, 524 (9th Cir. 2010) (granting relief from dismissal for failure to prosecute where attorney virtually abandoned client and misled him); Boughner, 572 F.2d at 978 (vacating judgment where attorney's "egregious conduct amounted to nothing short of leaving his clients unrepresented"); Jackson v. Washington Monthly Co., 569 F.2d 119, 122 (D.C. Cir. 1977) (Rule 60(b)(6) relief appropriate where attorney was "grossly rather than just mildly negligent toward his client" and "might also have misled the client by reassuring him that the litigation was continuing smoothly when in fact it was suffering severely from lack of attention"); cf. Heim v. Comm'r of Internal Revenue, 872 F.2d 245, 248 (8th Cir. 1989) (stating that "any errors committed by [counsel], even accepting the designation of gross negligence, do not constitute an adequate showing of 'exceptional circumstances'" and distinguishing cases granting relief for attorney negligence because in those cases client was left virtually unrepresented).

As is readily apparent, the nature of the attorney negligence in this case is different in kind (and degree) from the nature of the negligence in Community Dental Services and the cases it cited.  In this case, petitioner's allegations are not that counsel effectively abandoned his client.  Rather, petitioner alleges that counsel negligently failed to perform basic legal research, which led him to provide erroneous legal advice that resulted in a strategic misstep—the decision to voluntarily dismiss the vaccine case.  That the Special Master was not willing to extend the rationale of decisions like Community Dental Services to this different context cannot be characterized as an abuse of her considerable discretion under Rule 60(b)(6) in striking a balance between the interest in the finality of judgments and preventing injustice to individuals.

Further, none of the cases in which the courts of appeals concluded that Rule 60(b)(6) relief could be predicated upon counsel's gross negligence involved—as does the present one—a request for relief from the consequences of a voluntary dismissal.  As the Special Master noted, there is significant support for the view that Rule 60(b)(6) relief is not available in a case where a party has made a decision (albeit an ill-advised one) to voluntarily dismiss a case or to not file an appeal.  Nemaizer, 793 F.2d at 62 ("[A]n attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment" under Rule 60(b)(1) or 60(b)(6)); Pettle, 410 F.3d at 193 (denying relief under Rule 60(b) where plaintiff "made a specific choice to voluntarily request dismissal of his case with prejudice without fully understanding the consequences of his decision on his state court action"); Edward H. Bohlin Co. v. Banning Co., 6 F.3d 350, 356–57 (5th Cir. 1993) (quoting United States v. O'Neil, 709 F.2d 361, 373 n.12 (5th Cir. 1983) observing that "[t]he broad power granted by

---

Court of Claims (whose decisions the Federal Circuit must follow). Nat'l Neighbors, Inc. v. United States, 839 F.2d 1539, 1542 (Fed. Cir. 1988).

[Rule 60(b)(6)] is not for the purpose of relieving a party from free, calculated, and deliberate choices he has made").

In fact, even the Ninth Circuit, which took the most expansive view of the availability of relief under Rule 60(b)(6) in these circumstances in Community Dental Services, has since made it clear that its view was predicated on the disfavored status of default judgments.  Thus, in Latshaw v. Trainer Wortham & Co., 452 F.3d 1097, 1103 (9th Cir. 2006), the Ninth Circuit declined to reverse a district court's denial of a Rule 60(b)(6) motion where, as a result of the gross negligence and misconduct of an attorney, a plaintiff accepted a Rule 68 offer of judgment. It explained that its decision in Community Dental Services "was explicitly premised upon the default judgment context of that case."  452 F.3d at 1103 (citing Cmty. Dental Servs., 282 F.3d at 1169).  The court observed that "Rule 68 judgments and default judgments are quite different" and that "[d]efault judgments are disfavored and appropriate only in unique circumstances."  Id.

It thus appears that there is no support in the courts of appeals for the petitioner's argument in this case that—as a matter of law—the Special Master was required to grant her motion for relief under Rule 60(b)(6) because her decision to voluntarily dismiss her petition was based on her attorney's grossly negligent assessment of her chances of obtaining better relief in an alternate forum.  In that regard, the Court finds unavailing petitioner's heavy reliance upon the Federal Circuit's decision in Herring v. Merit Systems Protection Board, 778 F.3d 1011 (Fed. Cir. 2015), which petitioner argues established a "rule that the gross negligence of an attorney can constitute 'extraordinary circumstances' justifying relief under Rule 60(b)(6)."  Mot. for Review at 7.

The issue in Herring was whether the Merit Systems Protection Board ("MSPB") erred in dismissing the petitioner's appeal as untimely filed.  Under the Board's regulations, if a party does not file an appeal "within the time set by statute, regulation, or order of a judge, it will be dismissed as untimely filed unless a good reason for the delay is shown."  5 C.F.R. § 1201.22(c) (2012).  In Herring, the petitioner's appeal was filed ten days late because her attorney's office "negligently failed to transmit to her attorney" the documents she submitted "while confirming to Ms. Herring that the necessary documents and payment had been received."  778 F.3d at 1013. The court of appeals reversed the MSPB's decision that Ms. Herring had not shown "good cause" for the untimely filing.  Id. at 1017.  It did so based upon its conclusion that the Board had failed to consider factors it had held in other cases were significant to the determination of whether good cause exists.  Id.

Petitioner overreads Herring to the extent that she argues that the court of appeals in that case established any rule regarding whether and under what circumstances an attorney's gross negligence may properly serve as the basis for granting a request for relief under 60(b).  No such rule could have been established in Herring because Herring was not a Rule 60(b) case.  In fact, the "good cause" standard in 5 C.F.R. § 1201.22 is more liberal than the "extraordinary circumstances" standard for granting relief under Rule 60(b)(6) and is derived from an independent body of case law.[7]  In addition, the Federal Circuit's citation of Primbs occurred in

---

[7] For example, good cause under 5 C.F.R. § 1201.22 may be established by showing "that the delay was excusable under the circumstances and that the appellant exercised due diligence in

the narrow context of its discussion of one of the criteria set forth in the case law for determining whether good cause exists under 5 C.F.R. § 1201.22—prejudice to the agency which would result from waiver of the time limit.[8]   Herring, 778 F.3d at 1018.

In any event, even assuming that the citation to Primbs had signaled the court of appeals' endorsement of the Claims Court's Rule 60(b)(6) analysis in that case, it would provide little assistance to the petitioner.  That is because in Primbs, like Community Dental Services and the other court of appeals decisions upon which petitioner relies, counsel's actions were so egregious as to constitute a virtual abandonment of the plaintiff, and the judgment sought to be set aside was one which was imposed on an involuntary basis.

In Primbs, the Claims Court had dismissed the plaintiff's complaint for failure to prosecute after plaintiff's counsel failed to respond to the government's motion for summary judgment or to the court's order to show cause why the complaint should not be dismissed for failure to prosecute.  4 Cl. Ct. at 366.  The plaintiff, acting pro se, filed a request for relief from the dismissal, based on the fact that his attorney "not only failed to inform him of the court's orders to show cause and to dismiss, but actively deceived him about the status and ongoing prosecution of the case."  Id. at 367.  In fact, "[p]laintiff learned of these [orders] only after [counsel's] nervous breakdown," which had "prompted members of [his] firm . . . to review his case files, and upon discovering the dismissal, members of the firm contacted Mr. Primbs."  Id.

The court granted the plaintiff relief under Rule 60(b)(6), reasoning that "the interests of justice would best be served by vacating the judgment of dismissal and permitting this case to proceed for a judgment on the merits."  Id. at 368.  First, the court observed that "strong policies . . . [favor] resolution of disputes on their merits."  Id. (quoting Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980)).  Furthermore, "when the judgment attacked is a default judgment, 'Rule 60(b) will be liberally construed in favor of trial on the full merits of the case.'"  Id. at 368-69 (quoting Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 403 (5th Cir. 1981).  The court rejected the defendant's argument that the Supreme Court's decision in Link forecloses relief under Rule

---

attempting to meet the filing deadline."  Zamot v. Merit Sys. Prot. Bd., 332 F.3d 1374, 1377 (Fed. Cir. 2003); see also Williamson v. Merit Sys. Prot. Bd., 334 F.3d 1058, 1064 (Fed. Cir. 2003) (stating that "if the employee gives a reasonable excuse for the delay, such excuse should be accepted by the presiding official, absent a showing of substantial prejudice to the agency caused by the delay in filing").  Further, unlike Rule 60(b), under 5 C.F.R. § 1201.22, an attorney's mere negligence (as opposed to gross negligence) may be sufficient to justify a finding of good cause, at least where the petitioner exercised ordinary prudence and other mitigating factors are present.  Herring, 778 F.3d at 1017.

[8] The court of appeals noted Primbs's holding that "a serious . . . dereliction by an attorney, when unaccompanied by a similar default by the client, may furnish a basis for relief [from a dismissal] under Rule 60(b)(6)," id. at 1018 (citing Primbs, 4 Cl. Ct. at 370), and that "[t]hat is the more so where, as apparently here, little if any prejudice has befallen the other party to the litigation."  Id.  It then observed that in Herring, "[t]he MSPB has not asserted the ten-day delay resulted in any prejudice."  Id. (emphasis in original).

60(b)(6), noting that the Supreme Court's holding in <u>Link</u> that "'each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney' . . . . concerned the trial court's discretion to dismiss a case for failure to prosecute, and not the wholly separate issue of its power to vacate such a judgment." 4 Cl. Ct. at 369 (quoting <u>Link</u>, 370 U.S. at 634). Moreover, it observed that counsel in <u>Primbs</u> "was not merely negligent in his handling of plaintiff's suit. He actively misled and lulled his client into believing this case was proceeding smoothly." <u>Id.</u> at 369-70. The court reasoned that "[t]he usual understanding of the attorney-client agency relationship . . . should not bar relief under Rule 60(b) when the evidence is clear that the attorney and his client were not acting as one. The agency analysis is particularly inappropriate when the plaintiff has proven that his diligent efforts to prosecute the suit were, without his knowledge, thwarted by his attorney's deceptions and negligence." <u>Id.</u> at 370.

The court's ruling in <u>Primbs</u>, like the decisions of the courts of appeals in the cases cited above, are predicated on the notion that an attorney's gross negligence should not be imputed to the client where the attorney has affirmatively misled the client, and/or effectively abandoned the client so that the attorney is no longer acting as the client's agent. <u>Cf.</u> <u>Maples</u>, 132 S. Ct. at 923 (noting the "essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client" (citing <u>Holland v. Florida</u>, 560 U.S. 631, 659 (2010) (Alito, J., concurring))). It also recognizes, as did the other courts of appeals, that a liberal construction of Rule 60(b) is appropriate in cases where the policy favoring resolution of cases on their merits is at stake—i.e. in cases where the judgment from which relief is sought is either a default judgment or a dismissal for failure to prosecute. <u>Primbs</u>, 4 Cl. Ct. at 367.

In short, given the existing case law, the Court cannot say that the Special Master's conclusion that this case did not present extraordinary circumstances justifying relief under Rule 60(b)(6) was "clearly unreasonable, arbitrary or fanciful," or "based on clearly erroneous findings of fact or erroneous conclusions of law.'" <u>Lazare Kaplan Int'l, Inc.</u>, 714 F.3d at 1293. Therefore, the Court must, with great regret, deny the motion for review.

## CONCLUSION

The motion for review is **DENIED**.

**IT IS SO ORDERED.**

s/Elaine D. Kaplan         
ELAINE D. KAPLAN
Judge, U.S. Court of Federal Claims
